IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANTHONY TAYLOR,

    Petitioner,　　　　　　　　　　No. CIV S-05-0860 JAM GGH P

  vs.

C. EVANS, Warden, et al.,

    Respondents.　　　　　　　　　　FINDINGS AND RECOMMENDATIONS
_____/

*Introduction and Summary*

    Petitioner was convicted of several property crimes, e.g., forgery, grand theft by false pretenses, perjury in connection with false driver's licenses. Petitioner had prior strikes which were considered at sentencing. On April 27, 2001, petitioner was sentenced to 200 years to life, reduced on appeal to 175 years to life.

    The guilt evidence was overwhelming, and the guilt issues raised herein, discussed below, have no merit. However, petitioner raises a troublesome sentencing issue – the quasi-consideration of a strike which the record demonstrates did not "belong" to petitioner. After careful review, the undersigned recommends that the petition be denied.

\\\\\

\\\\\

*Issues*

This case possesses an involved federal procedural history which is repeated here to correctly arrive at the issues to be decided. The initial federal habeas petition was filed *pro se*. That petition did *not* contain a biased juror claim which had been raised in some post-trial state court proceedings. In an amended petition, filed after the AEDPA imitations period had expired (even under a most favorable calculation to petitioner), appointed counsel did attempt to raise an ineffective assistance of appellate counsel claim regarding the biased juror. However, even finding that the ineffective assistance claim was sufficiently related to the "straight" juror bias claim raised in state proceedings, petitioner's juror bias claim remained untimely under any rubric because it could not relate back to the initial federal petition which contained no bias claim whatsoever. It was therefore dismissed. Petitioner's attempt as well to file a second amended petition was denied. Thus, this habeas proceeding involves the (first) amended petition filed March 9, 2006 with the ineffective assistance juror bias claim stricken.

The issues to be decided here are as follows:

1. Insufficiency of the Evidence (Count V);

2. Impermissible, Suggestive Photo Line-Up Procedures;

3. Denial of Right to Counsel at Sentencing When the Trial Court Denied a Continuance for the Purpose of Acquiring New Counsel;

4. Petitioner Was Denied Due Process When the Trial Court Based its *Romero* Decision on a Strike (Conviction) Not Actually Sustained by Petitioner.

*General Background Facts*

The California Court of Appeal has succinctly detailed the pertinent background facts.

> Count one involved an elaborate forgery scheme in April of 1999. Using a deposit refund check he had obtained from T & G Autos, defendant crafted a nearly $29,000 check from T & G made out to one of his aliases, Willy Lewis, and deposited that check into a new account at the Triple S Credit Union. Upon making this deposit, defendant received $2,500 back in the form of a cashier's

check from Willy Lewis to another of defendant's aliases, Terry Brown. Defendant then cashed the Terry Brown check at the Money Mart.

Counts two through five involved grand thefts by false pretenses during a one-week span in late July and early August of 1999. During this spree, defendant bought approximately $17,000 worth of goods from Beck's Furniture (count two), Circuit City (count three), Good Guys (count four), and Furniture USA (count five). Defendant purchased these items on credit; for the credit applications, defendant used the social security number and birth date of the professional golfer, Tiger Woods, together with Mr. Woods' less known given first name of Eldrick. In proving these offenses, the prosecution presented the credit application documents defendant had submitted in the name of Eldrick Woods, including a copy of a driver's license with that name but with defendant's picture. In counts two through four (Beck's Furniture, Circuit City and Good Guys), the three salespersons positively identified defendant as the purchaser who claimed to be Eldrick Woods. The salesperson for count five (Furniture USA) did not testify at trial.

*2 Count six involved defendant's display of the fake driver's license in the name of Eldrick Woods. Defendant used this license to buy the items on credit from Beck's Furniture (count two), Circuit City (count three), Good Guys (count four), and Furniture USA (count five).

Counts seven and eight, respectively, involved defendant's perjury in applying at the DMV in August 1998 for an identification card in the name of Willy Lewis, and in December 1998 for a driver's license in the name of Eldrick Woods.

In early August 1999, defendant was a parolee at large, and law enforcement was on his trail. On August 6, 1999, he was directly linked to an apartment, a U-Haul truck, a Lexus automobile, and a storage unit. Officers searched these areas and items pursuant to defendant's parole search condition.

In the apartment's living room, officers found a wallet that contained several pieces of identification with defendant's photograph, including two California driver's licenses in the name of Eldrick Woods. Defendant was the only adult in the apartment at the time. Also in the living room, officers found keys to the U-Haul truck and to the Lexus automobile.

The U-Haul truck was parked close to the apartment. The rental agreement for the truck was found in it, in the name of Eldrick Woods and with Tiger Woods' birth date. The officers determined from the license plate on the truck that it had been used to pick up the purchased merchandise at Beck's Furniture involved in count two.

Officers had earlier seen defendant enter the Lexus with a key. The car was registered to one Nanette Duke, but maintenance receipts found in it bore Eldrick Woods' name. Two more California driver's licenses, one in the name of Eldrick Woods, were located in the car, as were a public storage unit rental application, agreement and receipt in the name of Eldrick Woods. A search of the storage unit uncovered much of the property that defendant had purchased, in the guise of Eldrick Woods, from Beck's Furniture (count two), Circuit City (count three),

3

Good Guys (count four), and Furniture USA (count five).
People v. Taylor, 2003 WL 786626 (Cal. App. 2003) *1-2.

*Discussion*

1. AEDPA Standards

The AEDPA "worked substantial changes to the law of habeas corpus," establishing more deferential standards of review to be used by a federal habeas court in assessing a state court's adjudication of a criminal defendant's claims of constitutional error. Moore v. Calderon, 108 F.3d 261, 263 (9th Cir. 1997).

In Williams (Terry) v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme Court defined the operative review standard set forth in § 2254(d). Justice O'Connor's opinion for Section II of the opinion constitutes the majority opinion of the court. There is a dichotomy between "contrary to" clearly established law as enunciated by the Supreme Court, and an "unreasonable application of" that law. Id. at 1519. "Contrary to" clearly established law applies to two situations: (1) where the state court legal conclusion is opposite that of the Supreme Court on a point of law, or (2) if the state court case is materially indistinguishable from a Supreme Court case, i.e., on point factually, yet the legal result is opposite.

"Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is, the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue. Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000). It is this prong of the AEDPA standard of review which directs deference to be paid to state court decisions. While the deference is not blindly automatic, "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of law....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at

1522 (emphasis in original).  The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority.  Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision.  Early v. Packer, 537 U.S. 3, 123 S. Ct. 362 (2002).  Nevertheless, the state decision cannot be rejected unless the decision itself is contrary to, or an unreasonable application of, established Supreme Court authority.  Id.  An unreasonable error is one in excess of even a reviewing court's perception that "clear error" has occurred.  Lockyer v. Andrade, 538 U.S. 63, 75-76 , 123 S. Ct. 1166, 1175 (2003).  Moreover, the established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts.  Early v. Packer, 537 U.S. at 10, 123 S. Ct. at 366.

However, where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue.  "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable."  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

2. Insufficiency of the Evidence (Count V) (Grand Theft by False Pretenses-Furniture USA)

The parties do not disagree on the facts presented at trial, nor does petitioner assert that the Court of Appeal left out pertinent facts.  Rather, petitioner claims that the failure to obtain the eyewitness to presentation of the false license renders the evidence insufficient for this count as a matter of law.

Generally, when a challenge is brought alleging insufficient evidence, federal habeas corpus relief is available if it is found that upon the record evidence adduced at trial,

viewed in the light most favorable to the prosecution, no rational trier of fact could have found "the essential elements of the crime" proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Under Jackson, the court reviews the entire record when the sufficiency of the evidence is challenged on habeas. Adamson v. Ricketts, 758 F.2d 441, 448 n. 11 (9th Cir. 1985), vacated on other grounds, 789 F.2d 722 (9th Cir. 1986) (en banc), rev'd, 483 U.S. 1 (1987). It is the province of the jury to "resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts." Jackson, 443 U.S. at 319, 99 S. Ct. at 2789. "The question is not whether we are personally convinced beyond a reasonable doubt. It is whether rational jurors could have reached the same conclusion that these jurors reached." Roehler v. Borg, 945 F.2d 303, 306 (9th Cir. 1991).

If the trier of fact could draw conflicting inferences from the evidence, the court in its review will assign the inference that favors conviction. McMillan v. Gomez, 19 F.3d 465, 469 (9th Cir. 1994). The fact that petitioner can construct from the evidence alternative scenarios at odds with the verdict does not mean that the evidence was insufficient, i.e., that no reasonable trier of fact could have found the conviction scenario beyond a reasonable doubt.

> In reviewing the sufficiency of the evidence supporting a conviction, we search the record to determine "whether a reasonable jury, after viewing the evidence in the light most favorable to the government, could have found the defendants guilty beyond a reasonable doubt of each essential element of the crime charged." United States v. Douglass, 780 F.2d 1472, 1476 (9th Cir.1986). *The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether the jury could reasonably arrive at its verdict.* United States v. Fleishman, 684 F.2d 1329, 1340 (9th Cir.), cert. denied, 459 U.S. 1044, 103 S. Ct. 464, 74 L. Ed.2d 614 (1982); United States v. Federico, 658 F.2d 1337, 1343 (9th Cir.1981), overruled on other grounds, United States v. De Bright, 730 F.2d 1255, 1259 (9th Cir.1984) (en banc).

United States v. Mares, 940 F.2d 455, 458 (9th Cir. 1991)(emphasis added).

Superimposed on these already stringent insufficiency standards is the AEDPA requirement that even if a federal court were to initially find on its own that no reasonable jury should have arrived at its conclusion, the federal court must also determine that the state appellate court not have affirmed the verdict under the Jackson standard in the absence of an

unreasonable determination. Juan H. v. Allen, 408 F.3d 1262 (9th Cir. 2005).

The flaw in petitioner's reasoning is the unstated, erroneous premise that the jury cannot be aided in its determination of Count V by the evidence in all the other counts that points unequivocally to the identity of petitioner as the perpetrator in Count V. Petitioner also assumes that the jury cannot draw reasonable inferences from the circumstantial facts such as – Furniture USA stolen/falsely obtained property was found in an area controlled by petitioner. Petitioner effectively argues that the prosecution must affirmatively rule out, by virtue of direct evidence, that no other person may have placed the property there.

As seen on a Furniture-USA credit application on which the name, signature, social security number and date of birth of golfer Tiger Woods appeared, we know that this highly specific MO was the identical MO used for those stores in which eyewitness identification of petitioner had been made. Under the rules of evidence allowing MO to establish identity, Cal. Evid. Code § 1101, Fed. R. Ev. 404(b), there was a very great likelihood from this fact alone that petitioner was the person involved with the Furniture USA count. We know that the fake licenses purportedly in Tiger Woods' name had a picture of petitioner on it. We know that two licenses bearing the name of Tiger Woods (Eldrick Woods), were found in an apartment linked to petitioner. We know that the real Tiger Woods disavowed that the signature on the fake license(s) was his, and that the middle name for Eldrick Tiger Woods, the golfer, was incorrectly given as Eldrick Terrell Woods for felonious uses of the Tiger Woods identity. RT 90. We know that credit documents filled out at Furniture USA purportedly in the name of Eldrick Woods with Tiger Woods' Social Security number were forged. RT 95-96. We know that some Furniture USA ill-gotten property was found in a storage locker linked to petitioner.

When the circumstantial evidence for Count V is allied with the direct and circumstantial evidence for the entire case, petitioner's claim of insufficient evidence for Count V is frivolous under the legal standards given above.

\\\\\

### 3. Impermissible, Suggestive Photo Line-Up Procedures

Petitioner believes that he was unfairly convicted because of a suggestive photo-lineup. The Court of Appeal throughly discussed this contention, and reasoned, applying both state and federal law, that the photo arrays were not unduly suggestive. In order for petitioner to prevail, the court would have to find the appellate decision to be an "unreasonable" application of federal law. Petitioner's arguments have no merit.

> Salespersons Fisher (Beck's Furniture-count two) and Whaples (Circuit City-count three) viewed the same six-person photo lineup and identified defendant as the Eldrick Woods purchaser. Salesperson Howell (Good Guys-count four) was shown a single photo of defendant, which Howell identified as the Eldrick Woods purchaser. Fisher and Howell also identified defendant in court. (Whaples was not allowed to identify defendant in court, having seen defendant during the trial in an orange jumpsuit and figuring he was "the guy .")
>
> ****
>
> The photo lineup was in color and consisted of six different African-American males arrayed in two rows of three, one row on top of the other. The subjects have similar characteristics, especially their head shapes and wide-set eyes. The subjects in photos one through four (defendant was photo two) display an even closer resemblance.
>
> Defendant claims the photo lineup is impermissibly suggestive because his photo is front and center in the number two position, it has a lighter background, and it is dominated by the "blindingly white" shirt he was wearing. Defendant argues that "all [of] this amounted to an open invitation to select [his] ... photograph[.]" We disagree.
>
> The equal size and spacing of the photos and their arrangement in the lineup do not render any one of the photos dominant by position. Photos three, five and six also have light backgrounds. And although the defendant's white shirt does appear prominently, the subject in photo six is also wearing a white shirt. A photo lineup is not considered unconstitutional simply because the suspect is the only person wearing a particular item of clothing. ( *People v. Johnson* (1992) 3 Cal.4th 1183, 1217-1218, 14 Cal.Rptr.2d 702, 842 P.2d 1 [defendant was the only person in jail clothing]; *People v. DeSantis* (1992) 2 Cal.4th 1198, 1222, 9 Cal.Rptr.2d 628, 831 P.2d 1210 [defendant was the only person in red shirt].) Moreover, the officer conducting the photo lineup did not make any suggestive comments; rather, she properly admonished Fisher and Whaples that the person may or may not be in the lineup, and that the two of them were under no obligation to identify anyone. Finally, the record shows that in selecting defendant's photo, Fisher and Whaples each recalled particular details of their sales transactions with him.
>
> The police showed a single photo of defendant to salesperson Howell about four or five days after the sale, and only after Howell had described defendant in physical detail. A single photo procedure is not considered "inherently unfair." (*Ochoa, supra*, 19 Cal.4th at p. 413, 79 Cal.Rptr.2d 408, 966 P.2d 442.) In any

8

> event, an in-court identification such as Howell's may be admissible, despite an improper pretrial identification procedure, if it is based on the witness's independent observations. ( *People v. Ingle* (1986) 178 Cal.App.3d 505, 511-512, 223 Cal.Rptr. 723.) Howell was certain of his identification given that he spent about an hour with defendant, and defendant bought an unusual large television.
>
> We conclude the trial court did not err or violate due process in denying defendant's motions to exclude the witness identifications of salespersons Fisher, Whaples and Howell.

Peoplev. Taylor, supra *3.

Clearly established Supreme Court law holds that a pre-trial identification violates due process where: (1) the identification procedure is impermissibly suggestive, and (2) the suggestive procedure "give [s] rise to a substantial likelihood of misidentification." See Neil v. Biggers, 409 U.S. 188, 197, 93 S.Ct. 375 (1972).

The undersigned has reviewed the photographs in question for the multiple photo lineup. CT 100. There is no need for a lengthy description by the undersigned of what has already been described. Petitioner simply is not able to demonstrate that the California Court of Appeal was unreasonable in its determination of non-suggestiveness.

Moreover, no error in misidentification, including that for witness Howell, could be of ultimate benefit unless the error produced a substantial and injurious effect on the verdict. Brecht v. Abrahamson, 507 U.S. 619, 113 S.Ct. 1710 (1995). The identifications of petitioner were simply icing on the cake as far as guilt was concerned. For the facts and reasons set forth in the previous sections demonstrating the overwhelming circumstantial evidence, petitioner could have been convicted on such alone. Any suggestiveness leading to a likelihood of misidentification in the abstract was minuscule compared to the evidence of guilt.

4. <u>Denial of Right to Counsel at Sentencing When the Trial Court Denied a Continuance for the Purpose of Acquiring New Counsel</u>

On the day set for sentencing (after one or two continuances as one might interpret the record), petitioner sought to fire his counsel and retain his own private counsel. The basic facts were given by the Court of Appeal:

9

> On January 9, 2001, the jury, already having found defendant guilty of the current offenses, found that defendant had two prior "strike" convictions under the Three Strikes law. Just before this finding was announced in open court, defendant told the court that he wanted to waive the probation report and have his sentence imposed that day. The trial court declined this request; it continued the sentencing hearing to March 9, 2001, to obtain a probation report and to permit defense counsel to prepare posttrial motions.
>
> On March 9, 2001, the trial court granted defense counsel's motion to continue sentencing to allow counsel to prepare a motion for new trial. The matter was continued to April 27, 2001.
>
> On April 27, the matter was set for ruling on defendant's motion for new trial, motion to strike prior convictions, and sentencing. At the outset of this hearing, defendant made a Marsden motion for new counsel. ( *People v. Marsden* (1970) 2 Cal.3d 118, 84 Cal.Rptr. 156, 465 P.2d 44.)The trial court denied the *Marsden* motion in camera. As part of his *Marsden* motion, defendant also requested a 30 day continuance to hire private counsel. The trial court denied this continuance request, explaining: "I find that to be untimely, simply a delay tactic in the case. [Defendant] has had other private counsel in this case. He knows how to hire an attorney. If he wanted a private attorney to represent him at this stage of the case, he had plenty of time to do so. This case has been scheduled for sentencing for a number of months."

People v. Taylor, at *8.

The undersigned has reviewed the Marsden motion proceeding at which petitioner asked to acquire new counsel and for a 30 day continuance to obtain that counsel. The judge permitted petitioner to speak at length concerning his dissatisfaction with present counsel. Then defense counsel had his say with a further rejoinder from petitioner. One can see from the transcript, especially petitioner's constant interruptions of counsel, as well as one noted outburst, that petitioner was quite agitated and prone to hyperbole. The trial court made a factual finding that petitioner had received excellent representation, and that petitioner was simply attempting delay as a sour grapes tactic. RT (Marsden) 859. As indicated above, the judge relied on the ability of petitioner to have retained private counsel in the past, and his inactivity in doing so for sentencing, as a basis for the delay finding. Petitioner presents nothing to counter these factual findings.

If petitioner were indigent, he had no right to the appointed counsel of his choice at sentencing. Gonzalez v. Knowles, 515 F.2d 1006, 1012-1013 (9th Cir. 2008). It is not entirely

clear whether petitioner was suggesting that he could financially retain counsel, but this fact is doubtful. Thus, to the extent the request for new counsel and a continuance for such was predicated on a later appointment of counsel, petitioner had no such rights under the Sixth Amendment.

Assuming for the moment that petitioner had the financial wherewithal to actually retain counsel, he still had no right to spring this request on the day set for sentencing. The fact that petitioner had not even begun to start on his quest for new counsel spoke volumes about the delaying nature of the request versus any bona fide conflict. There was every indication that the initial thirty days in which to find counsel would require at least another continuance such that counsel could get up to speed. In any event, the trial judge thoughtfully inquired about the breakdown in communications and found petitioner's credibility in question. See Schell v. Witek, 218 F.3d 1017, 1026) (9th Cir. 2000) (en banc) (ultimate constitutional question is whether an irreconcilable conflict in fact existed). Moreover, petitioner's assertion that he was not visited enough is insufficient to raise a substantial conflict issue. Pulido v. Chrones, 238 Fed. Appx. 200, 203 (9th Cir. 2007) vacated and remanded on other grounds, Hedgepeth v. Pulido, 129 S.CT. 530 (2008). As the request for substitute counsel was properly denied, there was no basis for the continuance. See United States v. Sarsak, 282 Fed. Appx. 585 (9th Cir. 2008).

5. Whether Petitioner Was Denied Due Process When the Trial Court Based its *Romero* Decision on a Strike (Conviction) Not Actually Sustained by Petitioner

The large issue here is whether the trial court, in fact, relied on a conviction in exercising its discretion not to strike a strike at the Romero hearing. Given the stakes in this case, as seen by the sentence imposed, there was no room for error in the sense of having this "life without parole" sentence imposed based on a significant mistake.

To this day, petitioner does not attempt to prove that the drug conviction at issue was committed by another person. Rather, petitioner continues to argue and assume, as he did before the trial judge, see Marsden motion colloquy, that he could not have committed the

offense because his rap sheet showed him in prison for another conviction at the time, and that the "weight" of the evidence before the trial judge weighed in favor of not using the conviction. Traverse at 6-8. One would think the represented petitioner, after all these years, could unequivocally demonstrate the falsity of the conviction.

On the other hand, the state of the drug conviction evidence was "iffy" and was so referenced in the rap sheet attached to the probation report. See CT 334 referencing the conviction reliability as being based on "soft criteria." The probation officer did not rely on the drug conviction at all in the body of his report. CT 301-325. Defense counsel did not "assure" the trial judge that the conviction was true, but essentially stated that he had been unable to disprove it from the information that he had. RT (Marsden) 856.[1] Respondent does not attempt to expand the record to show that the conviction, in fact, was sustained; on the contrary, respondent intimates that petitioner is correct. The state of the drug conviction remains "iffy," and the weight of the evidence that petitioner did not sustain the conviction is in petitioner's favor.

As reported by the Court of Appeal:

> The trial court stated as relevant: "I understand it is a matter of dispute with the defendant, but upon my review of the rap sheet that is attached to the probation report in this case, that rap sheet indicates th[at] following the conviction, the service of prison time on the robberies and the completion or his release from prison in that case, that [defendant] was convicted of an additional offense of possession of drugs for sale. [] Regardless if the defendant did indeed suffer that [drug sale] conviction ..., the defendant has been convicted of three misdemeanors and at least three felonies. [] He has been committed to prison on at least two occasions and has suffered at least three parole violations. Before beginning the crime spree for which the jury in this case found him guilty of eight felonies, he has suffered the equivalent of at least 12 criminal convictions[.] [W]ith the addition of the eight convictions in this case[,][t]he defendant has suffered the equivalent of at least 20 convictions by the age of 30."

People v.Taylor, at *10.

---

[1] "Mr. Taylor was convicted in Woodland, was released from prison, and he denied that he's got the 11351, but from the information I have been able to glean, that's a conviction that he has. Now, whether it is or it isn't......"

12

Basing such an important decision as the determination to strike prior serious felonies for sentencing purposes, thereby saving a defendant from a life sentence, on false evidence is surely a due process concern. See Hovey v. Ayers, 458 F.3d 892, 916 (9th Cir. 2006). The undersigned is troubled that the trial judge, at least initially, determined to use this drug prior despite what should have been bona fide doubts as to the correctness of the prior. Unless the drug conviction took place on account of prison activities (something completely unknown), the "math" does not add up. The question becomes whether the alternative reasoning not utilizing the drug conviction, at least not consciously, saves the sentence.

> The trial court drew these numerical conviction totals from the body of the probation report, which itemized all of defendant's convictions without listing the challenged drug sale conviction; the trial court relied on the body of the probation report in sentencing defendant. Coupling these facts with the "regardless" preface in the trial court's above-quoted remarks, it is clear the trial court did not rely on the purported drug sale conviction in sentencing defendant.

People v. Taylor, at *11.

Understanding that the Court of Appeal's reasoning is entitled to AEDPA deference, the undersigned cannot find that it is an unreasonable interpretation of the record or application of federal law. Whether the undersigned might come to a different conclusion is insufficient to recommend a grant on this issue.

*Conclusion*

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied in its entirety.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised

that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: April 20, 2009

/s/ Gregory G. Hollows

UNITED STATES MAGISTRATE JUDGE

tayl0860.157